JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Igor Ivshin ("defendant") appeals from the judgment of the trial court which, after a jury trial, granted the plaintiffs-appellee's motion for a new trial. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} On December 6, 1997, plaintiffs Anthony Grosser ("Anthony"), Patricia Grosser ("Patricia") and Philip Formoso ("Philip") had just pulled out of the Grosser's driveway onto Biddulph Avenue, were traveling down the road, and began to pass a parked car on the street. At the moment that they began to pass the car, the defendant had turned onto Biddulph Avenue and was quickly approaching the plaintiff's van. The two cars collided head-on.
 {¶ 3} The plaintiffs filed suit against the defendant claiming personal injuries. The complaint alleged that on December 6, 1997, the defendant Igor Ivshin negligently operated his motor vehicle as to impact the car in which plaintiffs Patricia Grosser Philip Formoso were passengers and they suffered severe injuries, emotional distress and loss of earnings. Her husband, Anthony Grosser, claimed loss of consortium.
 {¶ 4} The defendant also filed a complaint against the plaintiff alleging personal injury. The suits were consolidated. The issue of liability was disputed, and the matter proceeded to a jury trial on December 11, 2001.
 {¶ 5} At trial, Patricia testified that her husband, Anthony, her brother, Philip, and she pulled out of their driveway on December 6, 1997, at about 9:30 p.m. It was a very cold evening, it was snowing and the roads were snow-covered because the snow plows had not yet plowed. The three plaintiffs traveled down their street, Biddulph Avenue, and passed just a few houses before passing a parked car on the road. Patricia stated that as they were passing the car on the right, the defendant had just turned onto Biddulph and was quickly approaching their vehicle without his headlights on. She testified that at that moment, she stated to Anthony and Philip, "Check out this guy. He has no headlights on," to which Anthony responded "Check him out. He's coming right at us and he is not stopping." Patricia stated that at that point, their car was nearly stopped and as close to the parked car as possible while they anticipated, but could not avoid, the collision. The defendant collided head-on with the plaintiffs.
 {¶ 6} Patricia then detailed the trajectory of both vehicles at the point of impact and the events that took place immediately after the accident. She stated that she struggled to open the door to the van because it was so close to the parked car on the right. She said it was her first instinct to get out of the car and yell at the defendant and attempt to retrieve his driver's license and insurance information from him. She then went back to the van to check on her husband, where she found him temporarily unconscious. Patricia stated that while fire trucks and ambulances arrived within minutes of the accident, it took approximately two hours for a police officer to arrive. Anthony, the defendant and his passenger were taken to the hospital, while Patricia and Philip waited for the police. Patricia testified that during that time, she noticed her injuries, including pain in her finger and ankle. She also noticed that Philip was repeatedly spitting blood and complaining of additional injuries to his thigh and lower leg.
 {¶ 7} Patricia and Philip eventually went to the hospital that night. There, she found a police officer who directed the defendant to give Patricia his insurance information. Patricia testified that she smelled alcohol on the defendant as they were exchanging information.
 {¶ 8} Patricia testified that she was treated for a severely sprained ankle. She also stated that she was bruised on her neck, down her chest and around her lap from the seatbelt. Thereafter, she found it difficult to walk and pick up her young daughter. She received follow-up treatment through her family physician and was also treated at Buckeye Therapy Center for a couple of months.
 {¶ 9} Anthony Grosser testified corroborating Patricia's testimony regarding the accident. He further testified about the nature and extent of his injuries, including sore knees, a concussion, a sore chest, very sore from hitting the steering wheel, and a bruised lung. He stated that he was unable to work until the very end of December, could not pick his daughter up or enjoy other day to day activities. Anthony testified that he too went to Buckeye Therapy for follow-up treatment. He testified that his medical bills totaled approximately $6,800 and that his total out-of-pocket losses were about $10,000.
 {¶ 10} Philip also testified, corroborating the event as testified to by both Patricia and Anthony. He also testified he suffered from a herniated disk as a result of the accident and that his medical bills totaled approximately $7,000.
 {¶ 11} Defendant Igor Ivshin testified and admitted to having a few drinks a few hours prior to the accident. He further admitted that the plaintiffs' car was already moving around the parked car when he pulled onto the road and that there was room for three full size cars across on Biddulph Avenue.
 {¶ 12} The jury found the defendant five percent negligent and awarded him $760. Thereafter, the trial judge granted the plaintiffs' motion for a new trial. It is from this ruling that the defendant now appeals, asserting a sole assignment of error for our review.
 {¶ 13} "I. The trial court abused its discretion in granting the Appellee's motion for a new trial."
 {¶ 14} A motion for a new trial is governed by Civ.R. 59, which states, in relevant part:
 {¶ 15} "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 {¶ 16} "* * * (6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case * * *."
 {¶ 17} It is well established that the decision of whether to grant a new trial lies within the sound discretion of the trial court.Verbon v. Pennese (1982), 7 Ohio App.3d 182. Where a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court. Rohde v.Farmer (1970), 23 Ohio St.2d 82, paragraph one of the syllabus. "The term `abuse of discretion' connotes more than error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 18} On a motion for a new trial, the trial court's duty is to review the evidence adduced at trial and pass upon the credibility of the witnesses in general; the trial court does not undertake to judge the credibility of the evidence, but only to judge whether the evidence has the semblance of credibility. Verbon, supra, paragraph two of the syllabus. A trial court abuses its discretion when it grants a motion for a new trial after a jury verdict where there is substantial evidence to support said verdict. Id., paragraph three of the syllabus.
 {¶ 19} "A reviewing court should view the evidence favorably to the trial court's action rather than to the jury's verdict. The predicate for that rule springs, in part, from the principle that the discretion of the trial judge in granting a new trial may be supported by his having determined the circumstances and atmosphere of the trial that the jury's verdict resulted in manifest injustice. Jenkins v. Krieger (1981),67 Ohio St.2d 314, 320. Lastly, "when granting a motion for a new trial based on the contention that the verdict is not sustained by the evidence, the trial court must articulate the reasons for so doing in order to allow a reviewing court to determine whether the trial court abused its discretion in ordering a new trial." Antal v. Olde WorldeProducts, Inc. (1984), 9 Ohio St.3d 144, syllabus.
 {¶ 20} In this case, the plaintiffs presented evidence that the road upon which the collision took place was amply wide to accommodate three full-size vehicles across it. There was testimony from several witnesses, including Patricia, Anthony and Philip, that the plaintiffs' van was as near as the parked car as possible. Further, the defendant himself stated that the plaintiffs' van was "probably" as close to the parked car as possible, while the defendant's passenger testified that the plaintiffs' van was "kind of right next to [the parked car]." (T. 350) This evidence indicates that the plaintiffs passed the parked vehicle leaving adequate room for an oncoming vehicle to travel alongside their vehicle without causing a head-on collision. While the defense insinuated that the plaintiffs should have somehow pulled into a driveway to avoid the collision, there was testimony that the defendant's car approached at a high rate of speed, which would indicate that the plaintiffs had no time to spare. Further, the testimony presented indicated that the plaintiffs would have been unable to pull over further to avoid the defendant's car, as there was a row of solidly parked cars along the road.
 {¶ 21} While a blood alcohol level test was not taken, the defendant admitted that he consumed one, two or three shots of vodka within hours of the accident. Patricia also testified that while speaking to the defendant at the hospital, she smelled alcohol on his breath. The medical records from the emergency room on the night of the accident indicated that the defendant may have been taking muscle relaxants.
 {¶ 22} The plaintiffs also presented evidence of the injuries they sustained as a result of the accident, all of which was undisputed by the defendant.
 {¶ 23} The defendant admitted on cross-examination that the plaintiffs' van was already moving around the parked car when he pulled onto the road and that there was room for three full-size cars across on Biddulph Avenue. However, the defendant seemed unable to recall how the accident happened. When asked whether he thought the plaintiff could avoid the collision, the defendant responded that he didn't know. The defendant's testimony did not support a theory that the plaintiffs were in any way liable for the collision. Further, the passenger in the defendant's car testified that he was not paying attention and was not sure how the accident occurred. The defense failed to present evidence to refute their liability, much less support a theory that the plaintiffs were liable for the head-on collision.
 {¶ 24} The jury incredulously determined that the defendant was only five percent negligent, that plaintiffs were ninety-five percent negligent, and that the defendant was entitled to $760. Having reviewed the record in its entirety, we find the trial court did not abuse its discretion in granting the plaintiffs' motion for a new trial. The trial court based its judgment on the plaintiffs' evidence as to how the accident occurred and the lack of evidence to the contrary presented by the defendant. The trial court examined the transcripts in full, quoting specific portions of the transcript which supported its conclusion before rendering its decision. We do not think that the trial court acted unreasonably, arbitrarily or unconscionably in granting a motion for a new trial.
We therefore affirm the judgment of the trial court.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. MCMONAGLE, A.J., and JAMES D. SWEENEY, J., concur.
N.B. This entry is an announcement of the court's decision. See App.R.22(B), 22(D) and 26(A); Loc.App.R.22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).